Audrey J. LESSENGER, Appellee,

v.

Ralph U. LESSENGER, Appellant.

No. 52845.

Supreme Court of Iowa.

March 5, 1968.

———◇———

Morrison, Morrison & Morrison, Washington, for appellant.

Bailey C. Webber, Ottumwa, for appellee.

GARFIELD, Chief Justice.

Defendant Ralph U. Lessenger has appealed from decree granting plaintiff Audrey J. Lessenger a divorce, custody of the daughter (seven at time of trial in May, 1966), with reasonable visitation right to defendant, $80 a month child support until she graduates from high school or sooner marries, awarding each party an automobile subject to the indebtedness thereon and the household goods in the possession of each, also subject to indebtedness.

No complaint is made as to any of the above provisions and the decree, as to them, is affirmed.

The decree also provides that a farm of 397 acres, a dwelling in Wapello, all farm machinery, crops, stored grain and hay be sold under the court's supervision by plaintiff's attorney and defendant's then attorney, appointed commissioners for such purpose. From the sale proceeds the secured obligations are first to be paid, then costs of sale including real estate broker's commissions allowed by the court and expenses and charges of the commissioners for their services, then unsecured obligations, and from the net remaining proceeds pay plaintiff ⅓ as lump sum alimony and the remaining ⅔ to defendant.

The trial court retained jurisdiction over the commissioners and parties for making

additional orders or directions to carry out the decree. Partial distribution of lump sum alimony, as it could be determined and available, might be made under the court's supervision and direction. Costs of the trial were divided equally between the parties.

This is the second appeal of this case. From the decree following the first trial plaintiff wife appealed, contending the allowances of lump sum alimony of $6000 and child support of $50 per month were inadequate and not based on sufficient evidence. We held the evidence was inadequate as to the essentials to be considered in determining the amounts of alimony and child support which were "right," as the term is used in section 598.14 Codes 1962, 1966. Accordingly we decided "The decree must be set aside and the cause remanded with directions that the trial court permit a reopening for further evidence on the issues of the amount of child support and a proper property division or lump sum alimony." Lessenger v. Lessenger, 258 Iowa 170, 176, 138 N.W.2d 58, 61.

Pursuant to our mandate, further evidence was taken before a different trial judge, largely as to the financial condition of the parties. Since, as stated, defendant appellant makes no complaint as to the allowance for child support, we have to consider only the provisions of the second decree for the benefit of the wife. We shall try to avoid needlessly repeating what is said in our former opinion but suggest it be read.

■ I. Defendant assigns error in several findings of fact by the trial court. Since this is an equity case in which our review of both facts and law is de novo (Rule 334, Rules of Civil Procedure) we need not separately consider these assignments. We do not reverse an equity case upon such complaints as these but draw such conclusions from our review as we deem proper. Arnold v. Arnold, 257 Iowa 429, 433, 133 N.W.2d 53, 56, and citation; Sawyer v. Sawyer, Iowa, 152 N.W.2d 605, 612.

■ II. The principal questions we have for decision are whether plaintiff wife is entitled to a third interest in the net proceeds of substantially all assets of the parties and whether they should all, especially the 397 acre farm, be sold by the attorney-commissioners appointed by the court, under the latter's supervision and direction.

The equity in the farm is much the most valuable asset of the parties. Defendant contends in effect its net value would be greatly reduced by carrying out the terms of the decree because of broker's commissions, fees and expenses of appraisers and the commissioners and, above all, capital gain tax. Defendant also calls attention to the fact he acquired the farm five years before his marriage to plaintiff and its sale, along with the farm machinery and equipment, would take from him his chosen means of earning a livelihood.

At the hearing after the remand a real estate broker called by plaintiff expressed the opinion the value of the 397 acres was then (May, 1966) $300 per acre. Plaintiff gave her opinion the value was then $120,-000 to $125,000. In a deposition taken by plaintiff two months before the hearing defendant said he had no idea of the value of the farm, "it is not for sale." A farmer-real estate broker who owned an interest in six farms in the same county, some by vendor's lien or purchase money mortgage, testified for defendant the value of the farm was $75,000. The trial court made no finding as to its value.

As stated in our former opinion (258 Iowa 170, 172, 138 N.W.2d 58, 59), defendant purchased the farm for $30,000; at the time the parties were married it was mortgaged for $18,000. This mortgage was later replaced by one to Prudential Insurance Co. for $30,000. At the time of the second hearing $21,300 was owing Prudential. Also as stated in our former opinion, an additional mortgage was given to Farmers Home Administration (FHA) for $17,-000. About $15,000 was owing on this mortgage together with interest from January

6, 1966. Taxes for 1965 of about $1550 plus penalty and interest remained unpaid.

Regrettably it was more than 17 months after the second decree was entered before the appeal was submitted to us. We have no way of knowing to a certainty whether taxes for 1966 have been paid nor the exact amount of secured indebtedness against the farm at any time subsequent to the hearing after the remand. It is probable, however, such indebtedness has substantially increased in amount from accumulated interest before now.

There is little doubt sale of the farm under the decree would result in substantial reductions from the gross sale price before the net balance could be arrived at and distributed to the parties. And we don't think it is best *for either party* to settle the matter of property division or lump sum alimony in the manner provided by the decree.

The commissioners are both busy lawyers, located some distance from the farm in another county. The then attorney for defendant, named one commissioner, has not represented defendant in taking or prosecuting the appeal. The attorney who succeeded him is located in a different county from both the farm and the home of plaintiff's attorney, the other commissioner. It would be inconvenient and expensive for the farm to be sold in this manner.

It is probable there would be a broker's commission. We may take judicial notice such commissions have increased to as much as five or six percent of the gross sale price, including the amount of incumbrances—not merely the balance of the sale price after paying the secured obligations, or the value of the owner's "equity."

On the question of liability for capital gain tax from sale of the farm, it was suggested in oral argument this might be avoided by replacing the farm with other property of similar or related use, thus amounting to an involuntary conversion. A classic example is where an owner of property condemned for public use or destroyed by a fire covered by insurance buys other property of similar or related use or service. However, no authority has been cited in support of the suggestion.

The only authority called to our attention is 34 Am.Jur.2d, Federal Taxation (1968), section 4221, page 51, which states: "The following sales do not qualify as involuntary conversions: Sales * * * under court order in private suits, * * *. Though the sales are not 'voluntary' in the regular sense of the term, they aren't caused wholly by acts beyond the taxpayer's control and therefore aren't involuntary for tax purposes."

We conclude there is a good chance claim would be made for a large capital gain tax if the farm were sold under the decree.

This action was commenced July 1, 1964. It should be concluded without the delay and inconvenience reasonably to be expected from carrying out the provisions of the decree. In our view plaintiff should be awarded lump sum alimony to be paid by defendant, he should be permitted to keep his farm, farm machinery and equipment and continue in his chosen calling.

Little need be added to our former opinion as to the contribution plaintiff made toward improving the farm. The parties moved onto it January 2, 1953 and lived there together until this action was commenced. During the first five years plaintiff worked in the fields and helped improve the farm in various ways. In 1961 she began selling Avon products and contributed her earnings toward family expenses. Plaintiff has continued on as an Avon representative. Her net income was $781 in 1963, $584 in 1964 and $953 in 1965.

Each party had been previously married and had one or more children from such marriage. Defendant is 14 years older than plaintiff.

Three assets other than the farm should be mentioned. The farm machinery was valued at $6900 to $7900. At least one

tractor was subject to a chattel mortgage on which some $1400 was owing.

About 31,600 bushels of sealed corn and 1260 bushels of sealed beans, produced in 1961 through 1965, were stored on the farm. Nearly $37,000 had been borrowed on this grain from Commodity Credit Corporation on which interest was accruing. It had been resealed from year to year under an allowance to the producer of 14¢ a bushel storage for each year following the first year after the grain was produced. At present prices of corn and beans there appears to be little net value in the sealed grain.

The third asset is a dwelling formerly owned by plaintiff's father in the town of Wapello, purchased by the parties on contract. Plaintiff's brief fixes its value at $4250, about $900 more than the amount unpaid on the loan against it at the time of the hearing. Monthly rents of $50 on it have been applied on the loan. If the rents have been paid and so applied until now the amount unpaid on the loan should be reduced to about $2700.

As before indicated, the decree provides the Wapello property is to be appraised and sold by the commissioners under the direction of the court. Incidentally, Wapello is more than twice as far from the location of the commissioners as the farm is. We think the property should be awarded to plaintiff subject to the indebtedness against it. It may well have a sentimental value to her in addition to its market value.. If she wants to sell it of course she may do so without further court proceedings or expense relating thereto.

In addition to the secured debts above referred to there was much other indebtedness to many other creditors. The trial court found the unsecured indebtedness totalled $19,726. This figure is not too high.

During pendency of this appeal it was stipulated defendant had deposited with the clerk of the trial court the $6000 alimony pursuant to the original decree under review on the former appeal; $2000 of this was paid plaintiff September 16, 1966 before notice of this appeal was filed four days later; from the balance of this fund plaintiff was to be paid temporary alimony of $150 per month commencing November 15, 1966 until procedendo issue from this court following this decision. We approved this stipulation without prejudice to the rights of either party upon this appeal.

Presumably plaintiff has received the $2000 of this $6000 paid in by defendant as well as $150 per month temporary alimony. Her brief in effect so concedes. It is possible the clerk has also paid the $80 monthly child support payments from this fund, although neither the stipulation nor our order provides therefor. If the child support payments have also been paid in this manner defendant should be credited with the amounts so paid as well as with the $2000 paid plaintiff September 16, 1966. Defendant is not entitled to be credited with the amount of temporary alimony the clerk paid from this fund. These payments of temporary alimony should total $2400 or $2550.

III. On the whole case, in addition to the award to plaintiff of $80 per month for child support from the time of the decree appealed from until the daughter graduates from high school or sooner marries, the $2000 paid plaintiff from funds furnished by defendant as just explained, the Wapello dwelling, the 1964 Ford car and the household furniture and goods in her possession, all subject to the indebtedness thereon, we award plaintiff the additional sums of $16,500 and $1500 for the services of her attorney on this appeal, together with interest thereon at five percent per annum from the date decree is entered in the trial court pursuant to this opinion.

$2000 of this $16,500, plus the $1500 allowed plaintiff for attorney fees, shall be-

come due and payable 60 days after judgment therefor with interest is entered in the trial court, the balance shall become due and payable March 1, 1969. These amounts shall be secured by a lien in plaintiff's favor on the 397 acre farm in defendant's name and special execution shall issue for the sale thereof to satisfy any amount unpaid after it becomes due and payable.

The clerk of the district court of Jefferson County shall pay over to plaintiff any balance remaining in her hands from the fund of $3502.21 paid to the clerk pursuant to order of this court dated January 10, 1967, plaintiff to give credit for any such balance she receives on the amount to become first due and payable.

All payments by defendant on the amounts awarded plaintiff are to be made into the office of the clerk of the district court of Jefferson County.

All property not awarded plaintiff is to be defendant's, subject to the indebtedness thereon.

Each party shall hold the other harmless from liability for any secured indebtedness against any property awarded such party. In addition defendant is to hold plaintiff harmless from liability for any debts incurred by either or both prior to commencement of this action July 1, 1964.

Court costs on this appeal as well as those incident to the second hearing in the trial court are to be divided equally between the parties.

For judgment and decree in harmony with this opinion, the cause is

Affirmed in part, reversed in part, and remanded.

All Justices concur except BECKER, J., who dissents.