In re the MARRIAGE OF Elizabeth BEEH
and Edward Beeh.

Upon the Petition of Elizabeth BEEH,
Appellant,

and Concerning

Edward BEEH, Appellee.

No. 55888.

Supreme Court of Iowa.

Jan. 16, 1974.

Rehearing Denied Feb. 14, 1974.

———◆———

Kersten, Opheim, Carlson & Estes, Fort Dodge, for appellant.

R. Thomas Price, Fort Dodge, for appellee.

REYNOLDSON, Justice.

The trial court in this cause denied alimony to a wife who devoted sixteen and one-half years to the role of full-time homemaker and mother to three children. It grounded its decision largely on the progress of "women's liberation," sex

equality, and the general social and economic emancipation of women. The wife, petitioner Elizabeth Beeh, appeals from this and other provisions of the dissolution decree. We modify in part, reverse in part, and remand with directions.

Petitioner and respondent were married April 2, 1956. They have three children: Debra, born February 12, 1957; Dianne, born October 15, 1960; and Edward, born November 19, 1964. At time of trial in September 1972 petitioner was 40, the respondent 44.

When this couple married, petitioner held a bachelor of science degree in nursing and was teaching nursing at the University of Iowa. She abandoned this profession and the couple established a home in Fort Dodge. The only employment outside the home petitioner has since undertaken was lecturing on nursing procedures four hours a day at a Fort Dodge hospital when first married, and later instructing in nursing at the junior college two mornings a week for two semesters in 1966 or 1967, substituting for two weeks in the program in 1970.

When this couple first met, the respondent, son of a successful Fort Dodge medical doctor, was employed (and has since been continuously employed) by Union Trust & Savings Bank, Fort Dodge, in which the Beeh family owns a major interest. He has been and is on the board of directors of Harcourt Savings Bank. He attended the University of Iowa from 1946 to 1948 and Babsen School of Business in Boston, Massachusetts from 1958 to 1960. Respondent has also taken banking courses at Iowa State University and attended three summer courses at a banking school at Madison, Wisconsin. He has a speech defect. A few years prior to this dissolution respondent underwent a spinal laminectomy involving the removal of a disc at the fourth lumbar level. He has had subsequent pain in the left leg for which he takes exercise therapy. Although this condition has interfered with the performance

of his duties at the bank, respondent testified it was not likely it would endanger his employment.

At time of trial this couple owned a Fort Dodge home valued at $45,000. Respondent's financial statement filed in the dissolution proceeding itemizes stock valued at $47,471.25 and a one-half interest in Beeh Investments, a partnership with his brother. The partnership assets included three farms and a commercial lot in Fort Dodge. The statement valued the respondent's one-half interest at $172,500.

Respondent's father is deceased. His will created two trusts. The Anne Beeh Trust is a marital deduction trust with assets valued of $325,000. Anne Beeh (testator's spouse, respondent's mother) is the lifetime beneficiary of the income (and permissible principal payments) and may designate in her will who shall ultimately receive the corpus. If she makes no designation, it will pass equally to respondent and his brother under the terms of the "Edward F. Beeh Trust." The latter trust is for the lifetime of Anne Beeh. Respondent has the right to "sprinkle" the income among Anne Beeh, his brother, himself, his children and the children of his brother. He has never exercised this right. At the death of Anne Beeh, the "Edward F. Beeh Trust" corpus will pass to respondent and his brother equally, in three installments extending over ten years. At present the sole asset of the last-named trust is 4215 shares of Union Trust & Savings Bank stock worth $45 per share, a total of $189,675.

Respondent and his brother are heirs and potential beneficiaries under any will left by their mother. The record does not reflect her separate assets except her stock valued at $129,700 in Beeh Farms Incorporated, in which she is principal stockholder and respondent and his brother are minority stockholders.

Respondent owns life insurance policies on his life in the contract total of $66,000. The beneficiary is his testamentary trust created for the benefit of the children of these parties. The present cash value of this insurance was not established. At least two $10,000 policies are paid up. There are loans totaling $7343.46 outstanding against these policies. Respondent has additional insurance and pension trust benefits relating to his employment.

Insurance on petitioner's life is a $25,000 New York Life policy carrying a premium of $547 per year and a $2000 Iowa Life policy which she owned when married.

Under the Uniform Gift to Minors Act respondent is custodian of the children's stock worth $13,296.61. The children's dividends have been placed in savings accounts. These accounts now total from $1400 to $1200 each.

With the exception of several of the insurance policies, a portion of respondent's shares of bank stock, the family car (a 1968 Pontiac), and perhaps some personal items, household equipment and furnishings, the property owned by these parties (all standing in respondent's name except an interest in the house) was obtained by gifts from respondent's father and mother.

Respondent's income is about $20,000 per year, $8600 from his employment and the balance from investments and fees for managing family property. All of this has been spent for family living and in addition, so respondent claims, about $1500 per year obtained from his mother.

In his answer filed in district court respondent conceded it was in the children's best interest that they be in the permanent care of petitioner.

Trial court decreed respondent should pay child support in the sum of $225 per month for each child over 14 years of age, to continue until such child attains the age of 19 years, marries or dies, whichever occurs first, and $175 per month for each child under the age of 14 years.

Petitioner was awarded no alimony. She was awarded her personal belongings,

the household goods and furniture, the 1968 auto, the family home "in lieu of alimony" and the $2000 Iowa Life Insurance policy.

Respondent was awarded all the other property and was to assume all debts and obligations. He was ordered to pay the costs and to pay petitioner $1500 of her attorney's $4000 claim for fees. Other provisions of the decree are not in issue. Trial court's conclusions of law upon which the decree is based include the following:

"Recent decisions have been materially changing the philosophy behind the laws pertaining to alimony. No doubt such results from women's liberation activity, Constitutional Amendments and legislation regarding sex equality. * * *

"It would appear unjust to require alimony payments for a spouse that is clearly able to provide for herself and where any children do not prevent her from being fully emancipated.

"There has been a recent emancipation of women socially and economically, particularly in the area of employment opportunities. Women are no longer restricted to certain types of jobs, and are entitled under the law to equal pay for equal work."

Upon this appeal petitioner claims trial court improperly disposed of issues relating to alimony, property division, child support, and attorney fees. She asks for an award to pay her attorney fees for this appeal.

### I. *Rules of appellate procedure.*

Briefs filed for both parties were excellant. However, in both briefs reference to the record were keyed to the transcript and not to the appendix as required by rule 344(g), Rules of Civil Procedure. The work of this court cannot be accelerated if nine justices must share one transcript. See Wilson-Sinclair Company v. Griggs, 211 N.W.2d 133 (Iowa 1973).

### II. *Scope of review.*

■ Our review is, of course, de novo. Rule 334, R.C.P. The court gives weight to the fact findings of the trial court, but is not bound by them. Rule 344(f)(7), R. C.P.

A just determination of the issues presented here turns on the facts in the appendix. No two cases are factually alike. Precedents are of little value. In re Marriage of Romig, 207 N.W.2d 780 (Iowa 1973); In re Marriage of Cook, 205 N.W.2d 682 (Iowa 1973).

### III. *Child support.*

■ Petitioner asserts when trial court fixed child support it should not have discriminated between children under age 14 and those 14 and over. She cites as authority one case, Weiland v. Weiland, 255 Iowa 477, 122 N.W.2d 837 (1963). There is nothing in that case which so ties the hand of the trial court in making "such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified." Section 598.21, The Code. Obviously the court took into consideration, as it could on the facts in this appendix, that as each child attained 14 and started to parochial high school he or she would incur additional tuition charges. It could well have concluded unless economic conditions changed these children, upon reaching high school, would simply require more money for allowances, clothes and activities. We find trial court's decree in this respect entirely justified. See In re Marriage of Romig, supra.

### IV. *Alimony.*

Both below and here, petitioner asks for a substantial award of permanent alimony.

Our above factual recital provides much of the information necessary for application of our criteria compiled in Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1969). After majority's decision in In re Mar-

riage of Williams, 199 N.W.2d 339 (Iowa 1972) we no longer consider the fault criterion. The *Schantz* guides are applicable not only to property division on dissolution, but to the issue of alimony. See Geisinger v. Geisinger, 202 N.W.2d 44 (Iowa 1972); Comment, 18 Drake L.Rev. 298 (1969).

At age 24 this petitioner had started an interesting and rewarding career, teaching nursing at the University of Iowa. For the next sixteen and one-half years she voluntarily interrupted that career to follow the occupation of homemaker and mother. We are relatively unimpressed by the respondent's inference she spent too much time golfing, dancing and playing bridge. We are not going to say such diversions, kept within bounds, should not be allowed those who stay at home and assume full-time responsibility for several small children.

■ Nor are we to be interpreted as holding one who interrupts a professional career for the role of· homemaker and mother has necessarily made a "sacrifice" under the *Schantz* pre-marital criteria. But no one, upon proper reflection, could say her career has not been affected by her virtual removal from her profession and its technical and scientific changes during sixteen and one-half years. She has lost all chance she may have had in the interim for seniority, pay increases, and possible pension rights. Albeit she is healthy, petitioner's alertness, her physical, nervous and emotional stamina, and her employment opportunities at age 40 cannot be that she had at 24. These considerations are "relative factors" referred to in the tenth *Schantz* post-marital criteria.

The testimony indicates the few hours credit toward her master's degree petitioner obtained prior to marriage can no longer be applied for that purpose. Obtaining that degree (a requirement if she is to resume teaching) would mean attending the university three full semesters with a corresponding outlay for tuition and books.

Referring briefly to certain of the other criteria, there is no indication in this record either party made any extraordinary sacrifice, or demonstrated any unusual devotion or care, in the furtherance of the marriage. Respondent's income has provided a relatively high standard of living to which petitioner has become accustomed. See In re Marriage of Boyd, 200 N.W.2d 845 (Iowa 1972). The home of these parties is in a good neighborhood and is one of the nicest in Fort Dodge. The family has enjoyed vacations and dined out regularly. The children have had the advantage of a full-time mother.

Respondent's financial statement itemizes personal expenses, income tax and social security tax payments totaling approximately $720 per month. This includes monthly apartment rent of $250 and utility payments of $18.

■■ We believe an award of alimony is justified in this case. There is no evidence before us, nor can we judicially note, that women have yet achieved social and economic equality with men. It may be when that nirvana is attained the role of alimony in the ordinary dissolution case, for either spouse, will be insignificant. In the meantime, we are not persuaded a 40-year-old divorced woman with three minor children in the home has been so "liberated" it necessarily follows consideration of alimony is impermissible.

More important, these children are not accustomed to a working mother. As in all dissolution cases, they are the innocent casualties of marital conflict. Termination of this marriage will be traumatic enough without having their home routine disrupted by full-time job demands on their mother. Alimony should be awarded to her so she might maintain the children in the same home until the approximate time the youngest is graduated from high school, and should be paid thereafter during the year and a half she might require to obtain her master's degree or otherwise rehabilitate her career.

■ Petitioner asserts she will require about $1100 per month to maintain herself and the children. Child support will pay a portion of this. The evidence indicates certain life-style economies could be effected which should reduce the total sum. Respondent shall be required to pay $350 per month alimony to and including June 1, 1982, and thereafter $450 per month to and including January 1, 1984. These payments shall terminate on petitioner's death or remarriage. Payments shall not terminate on respondent's death but in that event shall be a charge on his estate.

The expense of college for the children shall not be the obligation of the petitioner except to the extent of any child support received for a child while he or she is in college.

## V. *Property division.*

We have already said the extensive property rights here involved, almost all standing in respondent's name, came from his parents as gifts. We may consider that fact, the net worth of this property, and that neither party contributed to its acquisition (*Schantz* third post-marital criteria). Other *Schantz* criteria and relevant facts discussed in our prior divisions are applicable here. Testimony in the appendix establishes petitioner apparently has better health than does respondent.

In a number of prior decisions this court has granted a spouse an interest in property the other spouse has inherited. See, e. g., Neiderhiser v. Neiderhiser, 254 Iowa 791, 119 N.W.2d 245 (1963); Rider v. Rider, 251 Iowa 1388, 105 N.W.2d 508 (1960); Parizek v. Parizek, 210 Iowa 1099, 229 N. W. 689 (1930); Chamberlain v. Chamberlain, 185 N.W. 983 (Iowa 1922); Brett v. Brett, 191 Iowa 262, 182 N.W. 241 (1921).

There is no fixed rule, however, to sustain petitioner's claim she is unquestionably entitled to one-half of the property over which the court has jurisdiction. See Arnold v. Arnold, 257 Iowa 429, 133 N.W.2d 53, 60 (1965):

> "It is true some of our decisions have approved an award to the wife of as much as half the joint accumulations of herself and husband. Generally where it is done the accumulated property is the product of the joint effort of both spouses over a considerable period. This is not such a case."

All of the cases referred to in the last two paragraphs must be approached with caution, for they antedate the elimination of "fault" as a factor in property division. That factor played a part in the property division in several of those decisions.

Much of respondent's evidence below, and argument here, relates to the income tax liability which would accrue if additional property were awarded petitioner. Emphasis has been placed on respondent's brother's reluctance to terminate the partnership. Neither concern, although important, can be controlling.

■ We believe in this case a lump sum property award should be made. See Lessenger v. Lessenger, 261 Iowa 1076, 156 N.W.2d 845 (1968). After considering all factors, we hold petitioner should be awarded that property given her in the decree, and in addition, the New York Life policy on her own life and the sum of $30,000. This lump sum award may, at the option of respondent, be paid in 12 equal annual installments, without interest, commencing February 1, 1974. If no such election is made, the total sum must be paid by that date. In the event the installment option is exercised and in the further event respondent dies before the full sum is paid, the balance owed shall be a charge on his estate. In any event, respondent's obligation to pay petitioner $30,000 shall be a charge upon his interest in the Beeh Investments partnership until fully paid, and upon default in any payment, petitioner shall have the remedies provided in § 544.-28, The Code.

## VI. *Award for attorney fees in district court.*

■ The appendix contains an itemized statement of the services of petitioner's attorney in the district court. Single-spaced, it fills two pages of the appendix and includes services extending over a period of eight months.

In several recent decisions we have set out elements to be considered in the determination of reasonable attorney fees. See In re Marriage of Jennerjohn, 203 N.W.2d 237 (Iowa 1972); In re Marriage of Jayne, 200 N.W.2d 532 (Iowa 1972). Here the sums involved, the complexity of respondent's property holdings, the responsibility assumed and the professional standing and experience of the attorney might well justify an award greater than the $1500 fixed by trial court. But in absence of an itemization of time spent by the attorney, and giving weight to the trial court's finding, we are not justified in now substituting our judgment for his.

## VII. *Attorney fees on appeal.*

■ Petitioner's attorney has submitted an outstanding brief and well-organized appendix. This case was competently argued on appeal. Again, we are handicapped in fixing the amount respondent should pay toward those services by the absence of a complete time itemization. The attorney spent 72.2 hours in briefing the case for appeal. Time involved in preparing for and in connection with submission totaled 11 hours. No information has been submitted relating to the time spent in preparation of the appendix and reply brief. We must also consider in this instance respondent's immediately available financial resources, other obligations imposed upon him, and the fact we are not fixing the total fee, only the amount respondent should pay.

We hold respondent should be ordered to pay $2500 toward petitioner's attorney fees and costs incurred. All other costs shall be taxed to respondent.

The judgment of the trial court is reversed in part and modified. This case is remanded for judgment in accordance with this opinion.

Modified in part, reversed in part, and remanded with directions.

MOORE, C. J., and REES, UHLENHOPP and HARRIS, JJ., concur.

LeGRAND, MASON and RAWLINGS, JJ., dissent.

McCORMICK, J., takes no part.

LeGRAND, Justice (dissenting).

In this case the majority orders a husband to pay for child support and alimony virtually all of his earned income for the next six years, a slightly less burdensome amount for the next five-and-one-half years, and awards her outright $30,000 more than the trial court allowed by way of property settlement. I think this result is wrong for several reasons, and I therefore dissent.

The general principles by which disputes like this are governed are without dispute and are correctly stated in the majority opinion. My quarrel is with the manner in which they have been applied here. Despite the majority's claim of adherence to Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1969), I contend the opinion flies directly in the face of the guidelines of that case. Except for length of marriage—sixteen years—every other Schantz criterion militates against the conclusion reached by the majority.

After 22 years of continuous employment in a bank controlled by his family, respondent has attained the status of teller with an annual salary of $8600. Until two years ago he earned $6000 per year. The evidence shows he will continue to have employment at the bank, but that his present position is "where he's going."

He is 44 years old, she is 40. He has physical disabilities which impair his job

performance, she is in perfect health. She is better educated than he and has her own profession—nursing—from which she concedes she can earn at least as much as he makes at the bank.

Almost everything these two people have came to them by way of gift from his family. This includes the homestead and most of its furnishings. The trial court awarded petitioner property having an approximate value of $50,000. The decree also provided for support payments for three minor children fluctuating over the next six years from $625 per month down to $400 per month, depending upon the ages of the children from time to time. Then payments decrease to $225 per month for the only child who will still be a minor.

The majority leaves the support payments undisturbed, but provides for alimony in the amount of $350 per month for ten years and $450 per month for eighteen months thereafter. The total alimony awarded is $50,100. The majority also increased the property settlement in petitioner's favor by $30,000 payable at respondent's option in a lump sum or in twelve equal annual installments.

I believe these amounts are entirely unreasonable and unrealistic in view of the circumstances shown by the evidence. Respondent's earned income is approximately $12,000. (He receives fees for managing family property in addition to his bank earnings.) He also receives approximately $7500 from investments. Under the sliding scale of payments which the decree sets up, supplemented by the additional awards in the majority's schedule, respondent will pay over the next six years in support and alimony the following amounts: $11,100 for one year; $11,700 for each of the next two years; $9,000 for each of the following two years; and $9600 for the sixth year. Thereafter he will pay $6900 for each of the succeeding four years. His ob-

ligations will terminate—finally—with total payments of $8100 over an eighteen-month period for additional alimony after his youngest child has reached majority.

Taking into consideration age, health, earning capacity, source of property, and several other Schantz "factors" mentioned later, I must protest the result thus reached. There is nothing to justify allowing petitioner to live off the largess of her husband's family after dissolution as she has done during the sixteen years the marriage endured.

Several statements of the majority as bases for its holdings require some comment. The opinion talks of the value of property which has come to respondent from his parents. It is indeed considerable. However, much of it remains in a marital trust over which his mother has unrestricted power of appointment. There are others who may be preferred over respondent when and if that power is exercised—another child and a number of grandchildren. What she does could substantially reduce the property ultimately going to respondent. Yet the majority treats all of it as though it had already vested in him.

The majority also seems to object strenuously to the trial court's mention of "women's liberation, sex equality, and the general social and economic emancipation of women" in reciting the reasons for its decretal conclusions. Perhaps the trial court overemphasized this modern trend, but the result was nevertheless the correct one, even though the reasons for it may be subject to criticism. Furthermore how can we say woman's new status—recognized by almost everyone and statutorily mandated in many areas—is entitled to *no* consideration as a "factor" under the Schantz case? It is interesting, too, that the majority finds itself unable to "judicially note that women have achieved social and eco-

nomic equality with men" while at the same time taking such notice, without evidentiary support, that petitioner "has lost seniority, pay increases, and possible pension rights." I find the former as judicially noticeable as the latter.

The majority reaches another debatable, if not entirely untenable, conclusion in finding this healthy and athletic 40-year-old woman has lost much of her "alertness, and physical, nervous and emotional stamina" compared to a woman of 24, her age at marriage. From this the majority reasons her employment opportunities have diminished. Aside from the fact that I am unwilling to say a woman forty years old is over the hill, the evidence belies the majority's reasoning in the present case. It is clear petitioner can secure quick, if not immediate, employment as a nurse. Perhaps not in the teaching area, which she would prefer, but in the nursing profession generally.

In conclusion I make brief mention of the reliance placed by the majority on the claim the children are not used to a "working mother" and that it would disrupt their home routine if petitioner should now be required to take a full-time job. While there are several possible answers to this, again the reply here may be found in the evidence. Petitioner has always spent a great deal of time away from home. She could hold full-time employment without being gone much more than formerly simply by giving up her avid pursuit of her two main recreations, golf and bridge. Certainly these are both innocent and interesting diversions, but as practiced by her, they are also very time consuming. Perhaps this is a sacrifice she must make for the sake of her children.

I would affirm the trial court.

MASON and RAWLINGS, JJ., join this dissent.