# IN THE COURT OF APPEALS OF IOWA

No. 16-0761
Filed March 22, 2017

**KARA B. SWINGEN,**
        Petitioner-Appellant,

**vs.**

**CRAIG A. KOCH,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Hancock County, DeDra L.
Schroeder, Judge.

A mother appeals from the order modifying the parties' child custody
arrangement to provide physical care of the child to the father. **AFFIRMED.**

Richard S. Piscopo, Jr. of Yunek Law Firm, P.L.C., Mason City, for
appellant.

Carmen E. Eichmann of Eichmann Law Firm, Des Moines, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Kara Swingen and Craig Koch are the parents of P.L.K., who was born in 2008. In 2012, the parties stipulated to joint physical care of P.L.K., and the district court entered an order approving their stipulation. In 2015, Kara filed a petition to modify child custody seeking physical care of P.L.K. Craig answered, the matter was tried in 2016, and the district court entered an order granting Craig physical care of P.L.K. Kara appealed. The case was transferred to this court in February 2017.

During the modification action, Kara and Craig stipulated that a substantial change in circumstances warranted modifying the custody order to provide physical care to one parent, but they disagreed as to which parent should receive physical care. After hearing the evidence presented by the parties at trial, the district court determined it was in P.L.K.'s best interests to grant Craig physical care, providing the following rationale:

> It is without question and this court finds that Craig has shown greater stability than has Kara. Craig has maintained the same residence and is waiting to purchase a home when he is able. He continues to reside at the same residence since the separation of the parties and stipulation back in early 2012. Craig has continued to live in the same town, which is the school district where the child resides. Craig has maintained the same daycare provider for P.L.K. that P.L.K. has known since prior to the separation of the parties. Craig has continued to place P.L.K. in the position of coming first over his romantic relationships and social life.
> In contrast, Kara has changed residences, been fired from her employment, had a child . . . who is not the child of Craig or her husband, Andy, moved to a residence not in P.L.K.'s school district, has obviously not established a plan and routine that allows P.L.K. to timely attend school, has failed to provide P.L.K. a bedroom of her own in the approximately eight months since moving into her now husband's grandfather's home, has no established plan for P.L.K.'s schooling or daycare if she were to receive primary

placement, continues to consume alcohol in excess, which has led to her being unable to care for P.L.K., and has led to the involvement of law enforcement.

In addition, while neither parent has followed the stipulation to the letter, Kara shows a complete disregard for the orders of this court and for the place that Craig holds in the life of P.L.K. To unilaterally change P.L.K.'s school and not inform the prior school or the father is inexcusable. This led to P.L.K. attending a different school for approximately one month until Craig was forced to file a contempt action to get P.L.K. back to the only school which she has known. Unfortunately, both parents fail to communicate well regarding P.L.K., and neither parent holds the other in high regard.

On appeal, Kara disputes some of the district court's findings that led it to grant Craig physical care of P.L.K.[1] Her chief complaint, however, is that the court failed to "establish or even set forth an analysis of why the minor child should be separated from her half biological brother and step-brother."

We review orders modifying child custody de novo. *See Hoffman*, 867 at 32. Our controlling consideration is the child's best interests, a determination we must make on a case-by-case basis. *See id.* In deciding the best custodial arrangement for a child who is the subject of a modification action, we must determine which parent is better able to minister to the needs of the child. *See In re Marriage of Harris*, 877 N.W.2d 434, 444 (Iowa 2016) (modifying a joint physical care arrangement to grant the mother physical care where the mother had proved she was better suited that the father to minister to the needs of the children). "[T]he objective is to place the child in an environment most likely to

---

[1] Without specifically addressing each of Kara's disagreements as to the trial court's fact-findings, we reject her claims and conclude, overall, the record supports the trial court's determination that Craig has demonstrated greater stability than Kara has. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (noting that, on appeal, we give weight to the trial court's fact findings even though they are not binding on us); *Lessenger v. Lessenger*, 156 N.W.2d 845, 846 (Iowa 1968) (observing that we need not separately consider a party's assignments of error in the trial court's fact findings where our review is de novo because we do not reverse based on such complaints but rather draw such conclusions from our review as we deem proper).

bring the child to healthy physical, mental, and social maturity." *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996).

Our supreme court has stated that "[s]iblings should not be separated from one another without good and compelling reasons." *In re Marriage of Smiley*, 518 N.W.2d 376, 380 (Iowa 1994). The rationale for this rule is that "[s]plit custody deprives children of the benefit of constant association with each other." *In re Marriage of Wahl*, 246 N.W.2d 268, 270 (Iowa 1976). "The rule is not ironclad, however, and circumstances may arise which demonstrate that separation may better promote the long-range interests of children." *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981). Rather, contact with siblings is but "one of a number of factors which must be considered in determining what custody award should be made." *Wahl*, 246 N.W.2d at 270.

The benefit of placing P.L.K. in Kara's physical care in order to allow for greater contact with her half-sibling and stepsibling is limited. P.L.K. has never lived with either child on a fulltime basis. Additionally, the amount of time P.L.K.'s half-sibling and stepsibling spend in Kara's home is subject to the provisions of the custody arrangements involving the other parents involved. Accordingly, placing P.L.K. in Kara's physical care would not significantly increase the amount of contact P.L.K. has with either child. In *In re Marriage of Winters*, 223 N.W.2d 165, 168 (Iowa 1974), our supreme court concluded that separating four siblings was "greater than any advantage to be gained by placing them all in the custody of one parent" where "the children ha[d] already been long separated, ha[d] become adjusted to their situations, and ha[d] received adequate care." Such is the case with P.L.K. and her siblings.

We agree that it is in P.L.K.'s best interests to grant physical care to Craig. In the years since the parties stipulated to physical care of P.L.K., Craig has demonstrated he is better able to minister to P.L.K.'s long-term best interests by providing P.L.K. with stability, consistency, and safety. Accordingly, we affirm.

Craig requests appellate attorney fees. Awarding appellate attorney fees in dissolution cases rests within our discretion, and we consider the requesting party's needs, the other party's ability to pay, and whether the party was required to defend the district court's decision on appeal. *See In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). After carefully considering these factors, we award Craig $2000 in appellate attorney fees. Costs are assessed to Kara.

**AFFIRMED.**