In the Matter of Terry Eugene AUGUSTUS, a minor, Nedra Cummings, Grandmother and Court Appointed Guardian.

No. 52934.

Supreme Court of Iowa.

May 7, 1968.

Cudahy & Wilcox, Jefferson, for appellant Terry Eugene Augustus.

Reading, Pauley & Hutcheon, Jefferson, for appellant Nedra Cummings.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Asst. Atty. Gen., and R. K. Richardson, County Atty., for appellee State of Iowa.

GARFIELD, Chief Justice.

The State of Iowa filed an information in juvenile court under chapter 232 Code, 1966 alleging Terry Eugene Augustus, age 10, is without proper parental care and a neglected and dependent child as defined in the chapter. Separate able counsel was appointed at public expense for the boy and for Nedra Cummings, his maternal grandmother with whom he lived. The appointed attorneys have represented Terry and Nedra with commendable ability.

Following a hearing at which evidence was offered for the state, the boy and Nedra, the trial court found: Terry's mother was unfit to have his custody; she had abandoned both him and his sister Athena, age nine; the care, custody and control of Terry should be taken from the mother; the guardianship of Terry by Nedra should be terminated in the best interests of the child, and his care, custody and control placed with William and Harma Augustus at Coon Rapids, his paternal grandparents who also have custody of his sister Athena, with rights of visitation to Nedra.

From order and decree pursuant to the above findings Terry and Nedra have appealed.

The brief for Terry assigns these propositions relied on for reversal: (1) Error of the trial court in finding the child's best interests would be served by placing him in the home of his paternal grandparents rather than with his maternal grandmother who is his guardian; (2) Error in giving undue consideration to a case history by a county social worker and little weight to testimony concerning Terry's schooling, improvements and adjustments; and (3) The decision is not based on clear and convincing evidence, under the rules applicable to the trial of civil cases, that Terry was then a neglected and dependent child as alleged in the information and as said to be required by chapter 232 Code, 1966 as amended by chapter 203 laws of the Sixty-second General Assembly.

The separate brief for Nedra assigns this third proposition for reversal.

No one questions the propriety of the findings that Terry's mother was unfit to have his custody—or that of his sister—and had abandoned the two children by leaving Terry with Nedra and Athena with the Augustus grandparents. The important question here is presented by the first of the above propositions—whether, as the trial court found, it is best for Terry to be transferred from Nedra's home in Jefferson to the Augustus home in Coon Rapids, 28 miles distant, where the two children would be together.

■ I. Our review is de novo. Code section 232.58; Harter v. State, Iowa, 149 N.W.2d 827, 829 and citations. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f), par. 7, Rules of Civil Procedure; Harter v. State, supra, and citations. This proposition would seem peculiarly applicable in a matter of this kind. In re Yardley, 260 Iowa 259, 265, 149 N.W.2d 162, 166.

■ II. The second proposition asserted in the brief for Terry, supra, need not be separately considered. Ordinarily we do not pass upon such a complaint where our review is de novo. In such matters we review the facts as well as the law and draw what we think are proper conclusions therefrom. In re Yardley, supra, and citations; Lessenger v. Lessenger, Iowa, 156 N.W.2d 845, 847, and citations. We are unwilling to admit we give too much or too little consideration or weight to any part of the evidence.

■ III. The mother of the children, Nedra's only child, left them in Jefferson and Coon Rapids, respectively, about two years before the hearing herein on August 17, 1967. She was apparently living then in California where she became involved in serious violations of the criminal law.

On February 10, 1967 the sheriff at Jefferson went to Nedra's home in search of Ruby, the children's mother, and her male companion upon a verbal complaint received from Los Angeles that the two were fugitives from the State of California and considered dangerous. Nedra refused to let the sheriff search her home. This was within her rights since the officer had no search warrant. About four hours later, at 4:00 a. m., the sheriff returned to the home with what we understand was a search warrant and made a search. However, Nedra met him at the door, again refused permission for the search, and said "they" were not there. The sheriff later found Ruby and her companion who said they had been in Nedra's home. This evidence was received without objection. In any event, the sheriff observed living conditions in the home at the time.

The home was not divided into rooms and the one living space seemed to be shared by Nedra, her mother and Terry. Although three beds were in the room, only one appeared to be occupied—by these three persons. The sheriff testified the home was not very clean and he told Nedra he would call attention of the welfare office to what he saw and that this was no way for a child to be brought up. On July 6 the sheriff served Nedra in the same home with notice of the hearing on the information filed herein and he testified living conditions there had not changed since February 10.

Mrs. Sutherland, with the county department of social welfare, is the social worker to whom the sheriff made complaint following his visit to Nedra's home. She had been in the home previously, observed conditions there, and tried to suggest to Nedra improvements in them; she was particularly concerned about the lack of privacy between the three occupants; the home was not modern, the bath tub was without running water or drainage facilities; there was no toilet and no plumbing facilities. Mrs. Sutherland testified she told Nedra about the complaint by

the sheriff but, except that curtains were put around a bed for Terry several months later, conditions remained about the same until after notice of the hearing was served upon Nedra on July 6.

There is little doubt the house above referred to was inadequate and undesirable as a home for Terry. Witnesses for him and Nedra so testified. A long-time friend for whom Nedra worked possibly an hour a day said the house was not a fit place for the boy. One of the main points appellants press upon us is that about a month before the hearing, after notice thereof was served upon her, Nedra moved to a more desirable home where Terry had a room of his own and there was a bathroom with plumbing facilities.

Nedra, a widow of 50, has had difficulty with the law although her troubles in this regard were minor compared to her daughter. Perhaps the less said about the daughter the better except that it would be unthinkable to return Terry—or his sister— to her. In 1959 Nedra was arrested on a charge of operating a motor vehicle while intoxicated; the charge was reduced to reckless driving for which she paid a fine. In March 1961 she was fined for intoxication and on another occasion she was arrested and paid a fine for petty larceny.

The sheriff testified he had frequently seen Nedra in bars and taverns but has had little difficulty with her since her husband died about two years previously. Nedra said she has had no difficulty with the law, nor gone to a tavern or used intoxicants in the past two years. Her husband was frequently in trouble with the law and served a term in the penitentiary.

Terry has an I.Q. of 79, high borderline retarded, was not succeeding in his school work and unable to keep up with his class. In January 1967 he was placed in a special education class where at first he was timid and didn't know quite how to play with the other children. However, after a few weeks he adjusted well to the class and seemed to enjoy it. His teacher testified he and his clothing were clean and his attendance record was excellent although it had been poor in his regular class, he was doing good work and should continue in special education. She expressed the opinion it would be harmful to the boy to move him to another home. This view was apparently largely based on the affection of the boy for his grandmother and hers for him.

Terry's adjustment to the special education class and improvement in his school work there is also pressed upon us as a reason for leaving him with Nedra.

William Augustus, the boy's paternal grandfather, testified he didn't feel a change in custody was necessary but if the court decided it was best for the boy to make a change he and his wife would be receptive to taking him into their home. He is 54, she is 51. He is custodian at the school and his wife helps him there part time. They are well respected in Coon Rapids. At the time of the hearing one son was serving in the army and their younger living son was a junior at Iowa State University. Mr. Augustus has visited Terry at Jefferson once a month or oftener the past two years and takes his sister there to visit. The boy and girl get along well together and love each other deeply. Terry has visited in the Augustus home at times and is no stranger there.

There is no special education class in Coon Rapids but students from there in need of such classes are taken 20 miles to Carroll daily. Mr. Augustus receives A.D.C. for the little girl and if Terry goes to his home to live would also receive A.D.C. for the boy.

IV. Notwithstanding the matters urged upon us in the briefs for appellants we are not persuaded it would be best for Terry to remain in the home of his grandmother in Jefferson after the end of the present school year, presumably about June 1. We think there is every indication he will be better off with his paternal grandparents and sister in Coon Rapids. This will doubtless be a disap-

pointment to his grandmother and perhaps for a time to Terry himself.

■ Although disappointment of the grandmother is regrettable it is not an issue in the case. Our first and governing consideration must be the best interest of the child. Rule 344(f), par. 15, Rules of Civil Procedure; In re Morrison, 259 Iowa 301, 311, 144 N.W.2d 97, 103 and citation; In re Yardley, supra 260, Iowa 259, 268, 149 N.W.2d 162, 167.

Among the relevant provisions of chapter 232 Code, 1966 is section 232.1:

"Rule of Construction. This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the juvenile court shall receive, preferably in his home, the care, guidance, and control that will conduce to his welfare and the best interests of the state, and that when he is removed from the control of his parents, the court shall secure for him care as nearly as possible equivalent to that which he should have been given."

We think placing Terry in the home at Coon Rapids more nearly carries out this statutory mandate than leaving him with his grandmother and her semi-invalid mother in Jefferson. The house itself to which the boy was moved shortly before the hearing appears to be fairly adequate but he needs much more than a house to live in. He should have proper guidance and a healthy mental and moral atmosphere from those who have his custody. In re Morrison, supra, 144 N.W.2d 97, 103; In re Yardley, supra, 149 N.W.2d 162, 168. These he has not had from Nedra.

While no doubt she has much affection for the boy, Nedra has carried this to the point of over-indulgence and pampering. He has not been permitted to associate with or enjoy the company of other children. There has been a lack of proper guidance and discipline. At Coon Rapids Terry will have not only a desirable home but also the guidance of both grandfather and

grandmother and the company of his sister, only a year younger than he.

■ "A brother and sister should not be separated and lose the benefit of constant association with one another except where the circumstances require it. (Citations.)" McKay v. McKay, 253 Iowa 1047, 1053, 115 N.W.2d 151, 154. See also Welch v. Welch, 256 Iowa 1020, 1025, 129 N.W.2d 642, 644. Further, it is wise to have responsibility for the well-being and discipline of both children in the same hands. McKay case, supra.

The trial court found Terry was a fat, "sissy" type child, more effeminate than his sister. The court felt this was caused by the overindulgence of his grandmother and, if continued, would be apt to make him a social and sexual deviate. Also that the boy could not develop into a well-adjusted, useful and ambitious adult under the prevailing circumstances. We think there is clear and convincing evidence to support these findings.

Another matter of evidence may be mentioned. When Terry was left with his grandmother and later, when A.D.C. payments to her were started, she was in debt. For one thing she was making payments on three old automobiles, two of which were "junkers" for which she had been offered $8 each at the time of the hearing. Almost the entire income of Nedra and her mother consists of the A.D.C. payments for Terry and old age assistance for Nedra's mother. There is little doubt a substantial part of the A.D.C. payments were applied to Nedra's obligations unrelated to the care of Terry. Naturally Nedra cannot be happy over the termination of these payments.

■ V. The trial court received in evidence a detailed, carefully prepared 11-page report of Mrs. Sutherland, the social worker of the county department of social welfare before referred to, concerning her investigation of conditions surrounding Terry, his grandmother, paternal grand-

parents and related matters. The report was made at the request of Judge Harris of Greene and Carroll Counties, transmitted through the court's probation officer. The trial court ordered the report made available to the attorneys for appellants and this was doubtless done. Admission of the report was proper.

The amendment to Code section 232.31 by section 5, chapter 203 Laws 62d G.A. provides:

"The court's finding with respect to neglect, dependency, and delinquency shall be based upon clear and convincing evidence under the rules applicable to the trial of civil cases, provided that relevant and material information of any nature including that contained in reports, studies, or examinations may be admitted and relied upon to the extent of its probative value. When information contained in a report, study, or examination is admitted in evidence, the person making such a report, study, or examination shall be subject to both direct and cross examination when reasonably available."

This statute is very similar to Code section 232.46 which was before us in In re Yardley, supra, 260 Iowa 259, 149 N.W.2d 162, 166–167, and Harter v. State, supra, 149 N.W.2d 827, 828–829, except that the degree of proof here applicable is clear and convincing evidence rather than a preponderance. Both these opinions hold that "relevant and material information of any nature including that contained in reports" includes hearsay therein and its nature is to be considered as affecting its probative value rather than its admissibility. The decisions are applicable here.

Mrs. Sutherland was subjected to both direct and cross-examination and testified to much that is found in the report on which we base our decision.

 VI. The trial court did not find in so many words that Terry was a neglected or dependent child. Under Code section 232.33, subd. 3, par. c a finding of either neglect or dependency requires one or more of several dispositions of the case which include: "3. Transfer legal custody of the child, subject to the continued jurisdiction of the court to * * * c. A reputable individual of good moral character." This is the order made here.

Since our review is de novo, failure of the court to find in so many words that Terry was neglected or dependent does not call for a reversal unless we fail to find by clear and convincing evidence Terry was either neglected or dependent. The briefs of appellants concede this. We have little difficulty finding by the requisite proof applicable to such matters that Terry was both neglected and dependent under the following definitions.

A dependent child includes one "who is in need of special care and treatment required by his physical or mental condition which the parents, guardian, or other custodian is unable to provide." (Code section 232.2, subd. 14, par. b.)

A neglected child includes one "b. Who is without proper parental care because of the emotional, mental, or physical disability * * * of his * * * custodian.

"c. Who is without proper parental care because of the faults or habits of his * * * custodian.

"d. Who is living under conditions injurious to his mental or physical health or welfare." (Section 232.2, subd. 15, pars. b, c and d.)

The first and last two of these four definitions (232.2, subd. 14, par. b and subd. 15, pars. c and d) are particularly applicable here.

VII. We are doubly convinced the decision we reach is right by the statement of able counsel for Terry presented to us upon submission of the appeal that he would affirm the trial court, with perhaps a modification to let Terry finish the present school year. (Division IV supra approves such a modification.) Able counsel for

Nedra expressed the view the statement above referred to deserved consideration.

It is only fair to counsel for Terry to say his statement upon submission is based on conditions that have arisen since the hearing, after conferring with the teacher of the boy's special education class and Grandfather Augustus who, as stated, were witnesses called by him at the hearing. The principal existing condition is that Terry's mother has returned to Nedra's home, on parole from the State of California, bringing with her a three-month-old child of whom Terry's father is not the father.

Except that the decree is not to be enforced until the school year at Jefferson ends, it is affirmed, including the rights of visitation granted to Nedra and the trial court's retention of jurisdiction.

Modified and affirmed.

All Justices concur.