In the Interest of Michael D. VOELTZ, Teresa L. Voeltz, and Patrick N. Voeltz, children.

No. 61329.

Supreme Court of Iowa.

Nov. 22, 1978.

Normand C. Klemesrud, Charles City, for appellant.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Special Asst. Atty. Gen., and Frank C. Hoyt, Jr., Asst. Atty. Gen., for appellee State of Iowa.

Karl J. Horn, Charles City, for children.

Considered by REES, P. J., and UHLENHOPP, HARRIS, ALLBEE and LARSON, JJ.

UHLENHOPP, Justice.

Connie Voeltz, natural mother of Michael, 9, Teresa, 7, and Patrick Voeltz, 5, appeals from a district court order which terminated her parental rights to the three children. Neither David Voeltz, the natural father of Michael and Teresa, nor Gary Parks, the natural father of Patrick Voeltz, appeals from termination of his parental rights.

Connie Voeltz, age 35, has had mental and emotional problems since she was 13 years old. She has chronic paranoid schizophrenia and also suffers from narcolepsy and a thinking disorder. She has had treatment at Mayo Clinic, Independence Mental Health Institute, Cedar Valley Mental Health Clinic, Mental Health Center of North Iowa, and University Hospitals at Iowa City. She met her former husband David while they were patients at Independence. They were divorced in 1971. Gary Parks was Connie's boyfriend.

The three children are presently living in foster homes. They were initially placed in foster care about three years ago after Connie voluntarily entered the Institute at Independence.

The record presents a bleak picture. Prior to their placement in foster homes, the care provided the children was grossly inadequate. As a result of Connie's neglect, the police were frequently called to check on the children. In July 1972 they were called about Michael, then 3, and Teresa, then 20

months—Connie had left the children alone. The following week the police were again called, as the children had wandered four blocks from home; Connie was at home but she did not know where her young children were.

The next year, at the request of the police, a social worker was sent to the Voeltz home. Michael and Teresa had walked to a dry cleaning establishment four blocks away looking for their mother. Patrick, then 4 months old, was home alone. Connie had gone out to buy fingernail polish remover, leaving the children unattended. Several months later the police were again called about Michael, then 4. Connie had been walking to the library with him but had left him behind because he was too slow. These were not isolated incidents; the children were frequently left alone.

When Connie was home she failed to supervise the children. Then preschoolers, the children played outside or in the hall of the apartment for hours at a time without supervision. Connie locked them out of the apartment when her boyfriend visited, and the children were often seen playing on the steps of the apartment building at night as late as 10:30 p. m. A neighbor once found the children in the basement of the building at 11:30 p. m.; Connie had sent them to look for her watch and then had locked the door and gone to sleep. On one occasion Patrick got caught in a fire door when allowed to crawl away from the apartment; another time he was found sleeping in the hallway.

The children were not successful at taking care of themselves. They had trouble getting dressed—Patrick was often seen running around without clothing and all three children frequently played outside on cold days without proper attire. They also had considerable difficulty behaving when left unsupervised. They began stealing from other children and in stores—which Connie did nothing to stop. Michael distributed vitamins to the neighbor's children and played with matches. On several occasions he burned carpets in the hall and kitchen. After he succeeded in melting a

hall thermostat the family was asked to move.

The children were improperly disciplined and fed. They were diagnosed as borderline anemic, possibly the result of a lack of protein. They frequently missed school and Head Start. Connie fought with the children and blamed them for her troubles. When Michael got on her nerves on one occasion she kicked him down the stairs. On another occasion Teresa was black and blue after Connie hit her with a brush. A witness testified that Connie admitted biting Patrick in the face.

During this period the children were under six years of age. The lack of attention seriously affected their mental well-being. Michael was insecure, withdrawn, and often acted like a wild animal; Teresa began to follow his example, while Patrick was starved for attention.

Connie had difficulty also in managing her own life. She had problems with her finances and had to go to court for writing bad checks. She was asked to move from the latest two places she lived with the children. She was often confused and at times talked about suicide. She was eventually diagnosed as a chronic schizophrenic and entered Independence Mental Health Institute in May 1975. The children were first placed with her grandparents, who were unable to care for them, and in August 1975 they were placed in foster homes.

Unfortunately, Connie Voeltz's life has not changed for the better since her admission to Independence. Several witnesses are in agreement that Connie's stay there was unsuccessful. She showed little concern for the children while in the Institute, but two months after leaving that institution she asked about getting back the children. She told the social worker she wanted them so she could receive payments for aid to dependent children.

Connie has been unable to hold employment since leaving Independence, losing about ten jobs in less than two years. Her failure to take medicine prescribed for her narcolepsy has been a factor in job terminations. She was finally approved for Supple-

mental Security Income on the basis of her narcolepsy, schizophrenia, and unfitness for training. At the time of the hearing she was living with her parents, both of whom were suffering from serious health problems; her monthly SSI was her only source of income.

Connie's visits with her children since her stay at Independence have not been satisfactory. The children, especially Michael, were often upset by the visits and caused problems in their foster homes for several weeks thereafter. On one occasion Connie upset Michael by telling him to pray that his foster parents would not keep him. Michael has suffered from diarrhea both before and after the visits and claims he gets "spiders in his stomach when his mother is around." Sometimes Connie does not return the children on time and on one occasion the children were returned exhausted—they had gone to bed at 11 p. m. and were up at 4 a. m.

The foster care provided the Voeltz children has had good effect upon them. They are properly cared for and are all doing well at home and in school.

In her appeal Connie asserts several propositions: (1) Section 600A.8 of the 1977 Code of Iowa, under which the proceedings were taken, is overbroad and vague and therefore unconstitutional. (2) The trial court's findings do not justify termination. (3) The trial court did not consider Connie's rights as parent in ordering termination. (4) The termination order is not supported by clear and convincing evidence.

■ Our review is de novo. Rule 4, Rules of Appellate Procedure; *In Interest of Kelley*, 262 N.W.2d 781, 782 (Iowa). De novo review requires us to review "the facts as well as the law and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of the trial court's proceedings." *In re McDonald*, 201 N.W.2d 447, 453 (Iowa). See also *Long v. Long*, 255 N.W.2d 140, 143 (Iowa).

■ I. Connie raises her constitutional issues for the first time on appeal. See *McCalester v. Hillcrest Services to Children & Youth*, 232 N.W.2d 1, 3 (Iowa). Since these issues were not raised in the trial court we will not consider them now. *Wolfs v. Challacombe*, 218 N.W.2d 564, 570 (Iowa); *Matter of Guardianship of Sams*, 256 N.W.2d 570, 572 (Iowa).

■ Connie argues that we should consider the constitutional issues although not presented in district court. She claims she was denied effective assistance of counsel. To sustain this claim in a criminal case, Connie would have to show that her attorney's performance was not "within the range of normal competency," and the burden of proof would be on her. *State v. Veverka*, 271 N.W.2d 744, 750 (Iowa). We have examined the record and find that Connie has not met her burden of proof.

We decline to consider the constitutional issues raised for the first time on appeal. We assume arguendo that ineffectiveness of counsel may be raised in a proceeding of this kind, but we do not decide that question.

II. We consider the second and third propositions together, inadequate findings and failure to consider parental rights.

■ Since this is a de novo review we need not separately consider errors made by the trial court in its findings. "We do not reverse an equity case upon such complaints as these but draw such conclusions from our review as we deem proper." *Lessenger v. Lessenger*, 261 Iowa 1076, 1078, 156 N.W.2d 845, 846. See *Arnold v. Arnold*, 257 Iowa 429, 433, 133 N.W.2d 53, 56; *In re Augustus*, 158 N.W.2d 625, 630 (Iowa). Moreover, since we will take the mother's rights into account in our de novo review, failure of the trial court to consider her rights, if it did so fail, is not necessarily ground for reversal of the termination order. We thus do not sustain the second and third propositions, but decide the case anew under our de novo review.

■ III. Turning to the merits of the case, we have examined the entire record to

decide whether the State established by clear and convincing evidence that the conduct of Connie Voeltz supports termination of her parental rights. Code 1977, § 600A.8. Keeping in mind the best interests of the Voeltz children, we also realize that "there exists a parental right to integrity of the familial relationship, unless by conduct it be forfeited." *In Interest of Lewis*, 257 N.W.2d 505, 510 (Iowa). In addition we give weight to the principle stated in *Long v. Long*, 255 N.W.2d 140, 143 (Iowa), "That which has taken place and is likely to occur in the future because of present conditions must be considered. In other words, we are required to determine the long-range as well as immediate interests of the child."

A. The petition for termination of Connie's parental rights alleged that the following statutory grounds justified terminating her rights to Michael, Teresa, and Patrick, as provided in § 600A.8(4) and (5), Code 1977:

4. A parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent-child relationship.

5. A parent is palpably unfit to be a party to the parent-child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent-child relationship either of which are determined by the juvenile court to be permanently detrimental to the physical or mental health of the child.

 If one of these grounds is established by clear and convincing evidence the termination will be upheld. *In Interest of Kelley*, 262 N.W.2d 781, 785 (Iowa). We find that clear and convincing evidence exists requiring termination on the basis of § 600A.8(4).

Connie continuously failed to provide proper food, clothing, discipline, and supervision for her children. She repeatedly left the children alone in potentially dangerous situations where they had to satisfy their own basic needs. Testimony by Connie's brother, a former neighbor, and a home-maker-health aid, and a report prepared by two social workers show Connie's poor performance as a parent. The record clearly and convincingly shows that Connie substantially failed, time after time, to comply with her parental duties. She was provided "repeated counseling, homemaker services, referral to voc-rehab, treatment at M.H.I., they have referred the children to Head Start, they have referred them to Family Planning, they have made arrangements to help them with money-management, they have again given and prepared her for job counseling, they have tried to make a contract with her for watching the children." Despite this help, Connie did not show improvement in her ability to care for the children properly. Her past conduct requires termination of her parental rights.

B. In the long-range best interest of the children and in the consideration of the mother's parental rights, we have reviewed the record to determine whether Connie, despite her past conduct, can prospectively assume her parental duties responsibly. See *Interest of Freund*, 216 N.W.2d 366, 369 (Iowa). Unfortunately the record does not indicate that Connie will now or hereafter be able to care for her children.

Kenneth Barringer, a psychologist who examined Connie shortly before the hearing, recommended that Connie's parental rights be terminated because of her emotional inability to provide adequate and sound guidance for the children. Regarding Connie's prognosis Dr. Barringer stated:

She has been at the Mental Health Institute in Independence and treated there for her condition; that occurred sometime ago, and I do not see significantly improved progress to justify even now after I have seen her, after all this time an adequacy to assume the parental role, so I can only project what has happened in the past. She's seen two therapists, one at Independence, or the staff there and myself; role has not improved that materially. Not only that, but one of the factors in schizophrenia, there is often difficulty in learning from experience. . . .

Connie herself testified that she still had problems. Her testimony also indicates a general lack of awareness of her prior shortcomings and of the action that would be required to correct the situation. The evidence shows that she is unable to hold a job and continues to suffer from mental and emotional problems. She has no one to help her care for the children—she is now divorced, her parents are ill and in need of care, and her brother lives some distance away.

Connie's attorney does not appear to contemplate immediate return of the children, suggesting that the final decision regarding them be delayed to allow Connie time to rehabilitate herself. Connie has had three years to rehabilitate herself since the children entered foster care. In that time she was provided counseling by the North Iowa Mental Health Center, the Social Services Department, Vocational Rehabilitation, and University Hospitals' neurology department. We are not content to allow the children to remain indefinitely in foster care to await their mother's unlikely recovery. We have rejected similar suggestions in the past. *In Interest of Lewis*, 257 N.W.2d 505, 512 (Iowa); *In re Scarlett*, 231 N.W.2d 8, 12 (Iowa); *In Interest of Vanderbeek*, 231 N.W.2d 859, 862 (Iowa) (child abuse). See *In re Loeffelholz*, 162 N.W.2d 415, 425 (Iowa) ("children could not await their parents' maturity"); *In Interest of Kester*, 228 N.W.2d 107, 110–111 (Iowa) ("[W]e cannot gamble with the children's future. They must not be made to await their mother's maturity.").

A similarly situated mother in a recent Minnesota case suggested delay in termination. The court stated, in *Matter of Welfare of Kidd*, 261 N.W.2d 833, 836 (Minn.):

She suggests that she is content for the present to allow the child to remain in the foster home. The record, however, established not only that her condition resulted in a present inability to care for her child, but also that its projected duration would result in . . . permanent inability . . . . Further, such a situation precludes the establishment of parental bonds with the child by either the natural parent or adoptive parents within the foreseeable future which we regard as detrimental to the best interests of the child.

Connie's recovery, if possible at all, is not likely to be forthcoming in the near future. Dr. Barringer testified that Connie required consistent and long-term therapy, proper medication and an adequate response thereto, and an improvement in her job and peer relationships. He opined that possibly Connie could recover sufficiently to care for the children but probably not, although if she followed through with all the treatment she stood better than a 50-50 chance of recovering. The problem is that this requires an ongoing effort by Connie, whereas she has already been given therapy, medication, job counseling, homemaker help, and other services to no avail. She has failed to take prescribed medication and has trouble learning from her past mistakes. She has already had considerable time to recover but has made no noticeable progress.

In describing Connie we do not speak in a spirit of criticism, but with a sense of sadness. We appear to be dealing with an inadequate person and we must state the facts as we find them. Michael, Teresa, and Patrick cannot continue in their parentless limbo. Child custody should be quickly fixed and little disturbed. *In Interest of Kester*, 228 N.W.2d 107, 110 (Iowa). These children have been living in foster care for over three years; the longer they remain in foster care the more difficult a suitable adoption becomes. *In re McDonald*, 201 N.W.2d 447, 453 (Iowa).

Notwithstanding Connie's interests as mother, the best interests of the children dictate a severance of their mother's parental rights. We therefore uphold the trial court's decision.

AFFIRMED.