**IN THE COURT OF APPEALS OF IOWA**

No. 16-1961
Filed February 8, 2017

**IN THE INTEREST OF H.C. AND H.C.,**
**Minor children**

**D.C., Father,**
          Appellant,

**L.A., Mother,**
          Appellant.

_____

          Appeal from the Iowa District Court for Adams County, Monty W. Franklin,

District Associate Judge.

          A mother and a father separately appeal the termination of their parental

rights to their children, H.C. and H.C.  **AFFIRMED ON BOTH APPEALS.**

          Kevin E. Hobbs, West Des Moines, for appellant father.

          Bryan J. Tingle of Tingle Law Office, Des Moines, for appellant mother.

          Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant

Attorney General, for appellee State.

          Jane A. Orlanes of Orlanes Law Office, P.L.C., Clive, guardian ad litem for

minor children.

          Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A mother and a father separately appeal the termination of their parental rights to their children. Both parents challenge the grounds for termination found by the juvenile court. Additionally, they argue termination of their parental rights is not in the children's best interests, and they assert the closeness of each parent's relationship with the children along with their placement with a relative should obviate termination of their parental rights. After our independent review of the record, we concur with the decisions of the juvenile court, and we affirm its orders terminating the parents' parental rights.

### I. Statutory Procedure and Standard of Review.

Termination of parental rights under Iowa Code chapter 232 (2016) follows a three-step analysis. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). First, the juvenile court must determine if a ground authorizing the termination of parental rights under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set forth in section 232.116(2) to decide if proceeding with termination is in the best interests of the children. *See id.* at 219-20. Third, if the statutory best-interests framework supports termination of the parent's parental rights, the court must consider if any of the three permissive exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.* at 220, 225.

Our review of the termination-of-parental-rights proceedings is de novo, which requires that we examine both the facts and law and that we judge anew those issues properly preserved and presented. *See id.* at 219; *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). We will uphold an order terminating parental rights

only if a statutory ground found for termination was established by clear and convincing evidence, i.e., if the evidence leaves no serious or substantial doubt about the correctness of the conclusions drawn from it.  *See M.W.*, 876 N.W.2d at 219; *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (noting the juvenile court's order can be affirmed on any single ground found by that court if it is supported by clear and convincing evidence).  "As always, our fundamental concern is the [children's] best interests."  *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## II.  Grounds for Termination.

### A.  Grounds Found.

At issue here are the parental rights to H.C., born in 2012, and H.C., born in 2014.[1]  In July 2016, the children's guardian ad litem (GAL) filed her petition seeking termination of the parents' parental rights, asserting that, among other grounds, termination of the parents' rights to each child was proper under paragraph (h) of Iowa Code section 232.116(1).  That paragraph required the State to prove as an element of the ground that the child was "three years of age or younger."  *See* Iowa Code § 232.116(1)(h)(1).  However, the elder H.C. had turned four approximately two weeks prior to the GAL's filing of the petition.

At the beginning of the termination-of-parental-rights hearing, the GAL moved to amend the petition as to the elder child, explaining that the child was now over the age of three.  Over the parents' objections of untimeliness, the juvenile court orally granted the GAL's motion to amend.  Then, in its written

---

[1] The children have a sibling born 2016 that was not a subject of the termination-of-parental-rights rulings at issue here.

termination-of-parental-rights ruling concerning the oldest child, the juvenile court explained it granted the amendment of paragraph (h) in the petition to paragraph (f) as to that child because

> the parents' due process rights [would] not be violated or impaired if the amendment [was] allowed. The parents and their attorneys [were] fully aware of the child's age and the length of time that the child [had] been removed from the parents' custody and there [was] no asserted dispute concerning either of these issues. The proof requirements of each section [were] basically the same and the parents' preparation and evidence concerning either of these sections [were] also basically the same, with the only real difference being the additional burden of showing a longer time period of removal from the parents' custody being placed upon the [State] if the petition [was] allowed to be amended.

It also expressly found:

> [The elder child] was four years of age or more . . . . An order was entered which removed physical custody of the [elder child] from the child's parents for at least twelve (12) of the last eighteen (18) months, or for the last twelve (12) consecutive months and any trial period at home [had] been less than thirty (30) days. There exist[ed] clear and convincing evidence that the [elder child could not] be returned to the custody of the child's parents as provided in Iowa Code section 232.102 at the present time, all within the scope and meaning of section 232.116(1)(f).

Despite this finding, the court stated at the end of its ruling it was terminating the parents' rights to the elder child under paragraph (h); no reference to paragraph (f) was made. It does not appear that the parties pointed out the court's reference to paragraph (h) by way of an Iowa Rule of Civil Procedure 1.904(2) motion to amend or enlarge or an order nunc pro tunc.

On appeal, the mother challenges the juvenile court's ruling on this basis, among others. However, she does not challenge the juvenile court's grant of the GAL's request to amend the petition from paragraph (h) to paragraph (f). Because it "is well-settled law that a prevailing party can raise an alternative

ground for affirmance on appeal without filing a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the district court," we can consider paragraph (f) here as a basis for termination of the mother's parental rights to the elder child. *M.W.*, 876 N.W.2d at 221. Moreover, we decline to place form over substance and waste judicial resources on what was clearly a clerical error. *See generally State v. Hess*, 533 N.W.2d 525, 527 (Iowa 1995) ("An error is clerical in nature if it is not the product of judicial reasoning and determination."); *see also generally State v. Pearson*, 876 N.W.2d 200, 205-06, 207-08 (Iowa 2016) (discussing nunc pro tunc orders to correct an error in sentencing and explaining that, because a mistake "occurred at the original sentencing hearing [that] was inconsequential to the sentence imposed . . . , there was absolutely no reason for any court to order resentencing as a means to fix the mistake. Nor was there any reason for the mistake to consume the time and expense of two appeals and now the further review of this court. Nor was the mistake one that should further require the time and expense of postconviction relief proceedings."). "No matter how diligent the typist and proofreader, clerical errors are bound to creep in from time to time. It even happens in judicial opinions." *First Nat'l Bank v. Francis*, 342 N.W.2d 468, 474 (Iowa 1984) (Larson, J., dissenting). Here, it is clear the court's use of "(h)" at the end of the ruling was merely a clerical error and not what that court intended, evidenced by the court's allowance of the amendment of the petition from paragraph (h) to (f) and its express findings that the child was four years of age or older and within the scope of paragraph (f). *See In re E.S.R.*, No. 14-1917, 2015 WL 791795, at *2 n.3 (Iowa Ct. App. Feb. 25, 2015) ("[I]t is clear when

viewing the totality of the order that the court terminated the father's rights to [the child] under the proper paragraph, that is, (h)."); *In re A.H.*, No. 1999-519, 2000 WL 72092, at *1 (Iowa Ct. App. Jan. 26, 2000) ("We find the [S]tate did plead the wrong code sections and the order terminating therefore refers back to the incorrect code sections but this error is an obvious typographical error. The error does not prejudice [the mother] as the full text of the correct code sections plead is clearly contained within the petition to adequately advise her of the allegations."). The juvenile court clearly terminated the mother's parental rights to her elder child pursuant to paragraph (f), despite the typo, and to the younger child pursuant to paragraph (h).

### B. Paragraphs (f) and (h).

Iowa Code section 232.116(1) paragraphs (f) and (h) are essentially the same but for the applicable age of the child and the amount of time the child has been out of the home, as noted above. *Compare* Iowa Code § 232.116(1)(f) ("The child is four years of age or older" and "has been removed . . . for at least twelve of the last eighteen months"), *with id.* § 232.116(1)(h) ("The child is three years of age or younger" and "has been removed . . . for at least six months of the last twelve months"). Both paragraphs require the State to prove, by clear and convincing evidence, the child cannot be returned to the custody of the child's parents at the present time. *See id.* § 232.116(1)(f)(4), (h)(4). Both parents challenge this element of each ground. Upon our de novo review, we find the State met its burden.

### 1. Mother.

The mother takes issue with the juvenile court's statement in its rulings that she provided no evidence she was substance-free and involved in treatment programs, and she cites two exhibits showing she attended substance-abuse evaluation and treatment in late August 2016 and early September 2016 and provided three clean urinalysis tests during that time frame. However, even assuming the court's statement was in error, "we need not separately consider errors made by the . . . court in its findings" on a de novo review. *In re Voeltz*, 271 N.W.2d 719, 722 (Iowa 1978). Importantly, the court did not rest its ruling on that finding alone, stating:

> Whether [the mother] is sincere in her assertions or simply saying what she thinks people want to hear remains to be seen but either way, it will be quite some time before she has been able to deal with all of the issues that are present in her life and show that she is capable of being a protective, stable, and nurturing parent so that she could be a proper custodian for a child.

We agree.

The case commenced two *years* prior to the termination-of-parental-rights hearing, after the children were removed from her care due to significant abuse perpetrated by the father on the younger child—the facts of which are particularly disturbing. The children were returned to her care, only to be removed again in March 2016 after the father was discovered staying in the mother's home, even though she knew he was to only have supervised visits with the children, he had been using methamphetamine regularly, and there was a warrant out for his arrest based upon his past endangerment of the child. The father admitted at that time he had been staying with the mother off and on, and the children told

the social worker that the father had slept in their home and that they had "seen him a lot." Nevertheless, the mother denied that she had allowed him to be in her home and around her children.

Additionally, as late as June 2016, the mother and her newborn child tested positive for methamphetamine, but she only admitted responsibility for the positive test about a month before the hearing. She did not obtain a substance-abuse evaluation until mid-August 2016, about a month after the GAL filed her termination-of-parental-rights petition. The mother's late interest in sobriety and her failure to take responsibility for her actions demonstrate that she continues to make decisions without thinking of the impact on her children. Upon our de novo review, we conclude that there is clear and convincing evidence in the record that the children could not safely be returned to the mother's custody under Iowa Code section 232.102 at the time of the termination hearing. Therefore, we find there is clear and convincing evidence in the record that meets the requirements of Iowa Code section 232.116(1)(f) and (h). The State has proven these grounds support the termination of the mother's parental rights to the children.

### 2. Father.

The father also asserts the children could have been returned to his care at the time of the termination-of-parental-rights hearing, arguing "there was no definitive evidence that [the father] intentionally caused the injury to one of the children that led to the initial removal." He also argues there was no evidence that he presented a current threat to the children or that he lacked sobriety. Upon our de novo review, we disagree.

First, at the inception of this case, the father reported to law enforcement that the child's September 2014 injuries were an accident, stating he "was weak," "there was a shelf and the baby hit it." Yet, despite the child's extensive injuries, neither he nor the mother obtained medical care for the child. The doctor that examined the child indicated the history of how the accident occurred was not consistent with the child's injuries, and the cause of the injuries was never determined. The father ultimately pled guilty to child endangerment relating to the injuries. The father's guilty plea, coupled with his failure to obtain medical treatment for the child and the child's inconsistent injuries, demonstrates, at the very least, one child suffered, and the other was thus imminently likely to suffer, harmful effects as a result of the father's failure to exercise a reasonable degree of care in supervising the children—intentional or not. *See, e.g.*, *In re J.S.*, 846 N.W.2d 36, 43 (Iowa 2014) ("[W]e do not require neglect or physical or sexual abuse to be on the verge of happening before adjudicating a child as one in need of assistance.").

Moreover, though his therapist reported in December 2015 that the father was making progress, including taking responsibility for his actions, the father continued to use methamphetamine. After pleading guilty to child endangerment, he was sentenced to sixty days in jail, but he did not appear to serve his sentence in January 2016, causing a warrant for his arrest to be issued. The father admitted to social workers in March 2016, when he was discovered at the mother's home while evading the warrant, he had been using methamphetamine and marijuana. Other than his unsanctioned visits while staying with the mother, the father had no visits with the children from January 2016 until August 2016,

due to either having a no-contact order with one of the children, being a fugitive from justice, serving jail time, or failing to contact the service provider. At the termination-of-parental-rights hearing, the social worker testified the father had "not actively participated in treatment services for a period of time. There [had] not been ongoing contact between [the father and the children], and he [had] not been able to participate in their therapy services." The worker testified the father recently reported he had "initiated treatment services" and signed a release for her to obtain information from the service provider, but she had not yet received a response. Though present, the father did not testify at the termination-of-parental-rights hearing, nor did he provide any documentary evidence to show he was no longer abusing substances, having previously admitted to using them, or that he was no longer a threat to his children, given the circumstances of the initial incident.

Based upon the father's lack of involvement in the case, his admission to using methamphetamine, his history of domestic violence, and the child's substantial injuries at the beginning of the case, we conclude that there is clear and convincing evidence in the record that the children could not safely be returned to his custody under Iowa Code section 232.102 at the time of the termination hearing. Therefore, we find there is clear and convincing evidence in the record that meets the requirements of section 232.116(1)(f) and (h). The State has proven these grounds support the termination of the father's parental rights to the children.

### III. Best Interests.

Each parent argues termination of parental rights is not in the children's best interests. We disagree.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Children require permanency. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *see also In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)); *In re Kester*, 228 N.W.2d 107, 110-11 (Iowa 1975) (refusing to "gamble with the children's future" or force the children to "await their [parent]'s maturity" where the parent's history shows "good intentions, but feeble resistance to temptation and wrongdoing"). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the

needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the children must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

In this case, each parent has been given more than ample time to address his or her adult issues and demonstrate that he or she could provide and sustain a safe, stable, drug-free home for the children, and neither parent was able to do so. We credit the mother's recent sobriety, but her overall track record is not a good one. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the [children's] long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Here, the children are adoptable and doing well in the care of their grandmother. Giving "primary consideration to the [children's] safety, to the best placement for furthering the long-term nurturing and growth of the [children], and to the physical, mental, and emotional condition and needs of the [children]," *see* Iowa Code § 232.116(2), we conclude termination of the parents' parental rights was in the children's best interests.

### *IV. Statutory Exceptions to Termination.*

Finally, we consider whether any exception in section 232.116(3) applies to make termination unnecessary. *See D.W.*, 791 N.W.2d at 709. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation and internal quotation marks omitted). Here, the juvenile court found none of the exceptions apply, and we agree. Although the children are placed with a relative, the children are not in the grandmother's legal custody, as required under section 232.116(3)(a). *See id.* Additionally, we do not find that termination would be detrimental to the children based solely on the relationship between each parent and child. *See* Iowa Code § 232.116(3)(c). Neither parent's bond with the children outweighs the children's need for permanency. We agree with the juvenile court that the children's best interests are served by severing the children's legal ties with the parents, and we therefore decline to invoke section 232.116(3).

### *V. Conclusion.*

Upon our de novo review of the record, we agree with the juvenile court that the State proved the grounds for terminating the parents' parental rights under Iowa Code section 232.116(1) paragraphs (f) and (h); termination of the parents' parental rights was in the children's best interests; and none of the statutory exceptions set forth in section 232.116(3) apply to overcome the need

for termination of parental rights.  Accordingly, we affirm the juvenile court's order terminating the parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**