**IN THE COURT OF APPEALS OF IOWA**

No. 19-1599
Filed April 29, 2020

**IN THE INTEREST OF H.N. and E.N.,**
**Minor Children,**

**S.S., Mother,**
    Petitioner-Appellee,

**A.N., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman

Salic, District Associate Judge.


A father appeals the termination of his parental rights to five-year-old twins

under Iowa Code chapter 600A (2019).  **AFFIRMED.**


Richard N. Tompkins, Jr. of Tompkins Law Office, Mason City, for appellant

father.

Megan R. Rosenberg of Cady & Rosenberg Law Firm, P.L.C., Hampton, for

appellee mother.

Crystal L. Ely, Mason City, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

A father, Aaron, contests the juvenile court order terminating his parental rights to five-year-old twins. He attacks the order on three fronts. First, he contests the finding he abandoned his sons under Iowa Code sections 600A.2(19) and 600A.8(3)(b) (2019). Second, he challenges the determination he failed to provide financial support under section 600A.8(4). Third, he argues termination was not in the boys' best interests under section 600A.1.

After reviewing the record anew, we reach the same conclusions as the juvenile court. The twins' mother, Sarah, offered clear and convincing proof Aaron made, at best, a marginal effort to support or communicate with the boys. Ample evidence also buoys her position that termination is in the best interests of H.N., and especially, E.N., who has special needs. We thus affirm the termination order.

## I.      Facts and Prior Proceedings

Sarah and Aaron had been dating for less than two months when she learned she was pregnant. They never lived together. Sarah gave birth to H.N. and E.N. in June 2014. During their two-week stay in the hospital, Aaron visited the infants three times. During one of those visits, Sarah and Aaron broke off their romantic relationship. After the twins went home with Sarah, Aaron continued to visit two or three times per week.

But the regular visits stopped when Aaron was jailed on drug charges in January 2015. In May 2015, Aaron renewed contact with Sarah, asking to have a first birthday party for the boys when his mother was visiting. Sarah declined. Because of his marijuana dealing, she worried about Aaron having unsupervised

visitation with the boys. In response to her decision, Sarah received "nasty messages" from Aaron.

In December 2015 he petitioned for paternity and custody. From that filing until the court ruled on temporary matters in March 2016, Aaron did not ask to see the boys. The temporary order provided Aaron with gradually increased visitation. Aaron missed a few of those visits. Most dramatically, on Christmas Eve he did not answer his door when Sarah brought the children over. One of the boys ran into the house because the door was ajar. Sarah found marijuana in the living room and called authorities. The police arrested Aaron. Soon after, the Iowa Department of Human Services (DHS) investigated, returning a founded child-abuse report against Aaron.

In January 2017, the court issued a final paternity and custody order. It established visitation for Aaron and ordered him to pay $377.00 per month in child support.[1] He never exercised visitation because of his legal troubles. He started a prison sentence in April 2017 and received parole the following November.

After checking with the DHS, Sarah brought the boys to see Aaron in January 2018. Sarah was concerned about the effect of the visit on E.N., who had been diagnosed with autism. She explained, "[I]f any little thing is out of the norm for him, it can kind of, you know, puts him out of whack." The interaction occurred without incident. Afterward, Aaron texted Sarah to thank her for the visit and to discuss E.N.'s autism diagnosis. But after February 2018, Sarah did not hear from

---

[1] His obligation dropped to $50.00 per month during his incarceration. At the time of the termination hearing, he remained $2400.00 in arrears in his child support. The juvenile court noted: "In 2018, a total of $479.64 was withheld from his earnings, and from January through May of 2019, $166.11."

Aaron again until June 2019.[2]  In May 2019, Sarah petitioned to terminate Aaron's parental rights.  After hearing evidence, the juvenile court granted the petitions.  Aaron now appeals.

## II.      Scope and Standard of Review

Our review is de novo.  *In re Voeltz*, 271 N.W.2d 719, 722 (Iowa 1978).  De novo review requires us to assess "the facts as well as the law and adjudicate rights anew on those propositions properly presented."  *Id.*  After that assessment, we will uphold the termination if the petitioner proves any of the grounds alleged in section 600A.8 by clear and convincing evidence.  *Id.*

## III.     Analysis

In her termination petition, Sarah cited section 600A.8, paragraphs (3)(b) (on abandonment) and (4) (on failure to provide financial support).  Because we find clear and convincing evidence in support of paragraph (3)(b), we need not reach the second ground.

### A.      Abandonment

Aaron denies abandoning his children.  He insists his failure to maintain regular communication with them can be blamed on Sarah, who allegedly "blocked him on Facebook" and ignored his text messages.  Sarah places the fault back on Aaron.  She calculates that for about half of their lives Aaron has been behind bars or otherwise out of touch with H.N. and E.N.  Similarly, the juvenile court roundly rejected Aaron's excuses: "He has done nothing other than try to contact her

---

[2] The court revoked Aaron's parole in April 2018 when he was arrested for operating while intoxicated.  He returned to prison until that December.

sporadically through social media and sit back on his couch and complain to his family and friends about how Sarah is keeping his kids from him."

To test the juvenile court's determination, we start with the language of the statute. The legislature defined abandonment as a biological father or mother "reject[ing] the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(19).

Sarah had the burden to prove the elements of abandonment:

> If the child[ren] [are] six months of age or older when the termination hearing is held, a parent is deemed to have abandoned [them] unless the parent maintains substantial and continuous or repeated contact with the child[ren] as demonstrated by contribution toward support of the child[ren] of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child[ren] at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child[ren] or with the person having the care or custody of the child[ren], when physically and financially unable to visit the child[ren] or when prevented from visiting the child[ren] by the person having lawful custody of the child[ren].

Iowa Code § 600A.8(3)(b).

Sarah offered ample evidence that Aaron did not maintain "substantial and continuous or repeated" contact with the twins. Aaron did not make reasonable financial contributions toward their support, even when he was released from prison and working. He did not provide birthday or Christmas gifts regularly. We find Sarah satisfied the predicate language of section 600A.2(8)(3)(b) (requiring

contribution toward support of the child in a reasonable amount). *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012).

Beyond the lack of financial support, Aaron did not visit his sons for months on end. Nor did he otherwise maintain regular communication with the twins or Sarah. His sporadic text messages and social media outreach were "insufficient to meet the regular communication requirement contemplated under section 600A.8(3)(b)(2), and were at best only marginal efforts to communicate." *See In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012).

His claim that Sarah erected roadblocks to his ongoing contact with E.N. and H.N. is not credible. Sarah had not changed her phone number or home address for years. Aaron knew how to reach her but did not make the effort. His failure to engage with the boys in the ways listed in section 600A.8(3)(b) supports a finding of abandonment.

## B. Best Interests

We must next decide whether terminating Aaron's rights was in the twins' best interests. In asking us to preserve his parental rights, Aaron emphasizes the steps he has taken to manage his addiction and become a better father.

When deciding whether termination under chapter 600A is in the children's best interest, we may borrow the analytical framework described in Iowa Code section 232.116(2). *See In re A.H.B.,* 791 N.W.2d 687, 690 (Iowa 2010). That framework emphasizes the children's safety and physical, mental, and emotional health. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

These factors support the juvenile court's termination of Aaron's parental rights. *See In re B.H.A.*, 938 N.W.2d 227, 234 (Iowa 2020) (opining father's "chosen lifestyle" of criminality came "at the expense of a relationship" with his child). As Sarah testified, Aaron has been "very inconsistent" in his contact with the twins. That inconsistency threatens their well-being:

> He had visits for six months and then was incarcerated never making any contact whatsoever, and then as soon as he gets out, he just— he wants things to go right back to where they were not even taking into consideration what it could or has done to the boys.

Sarah testified Aaron is "pretty much a stranger to them at this point." She noted reintroduction to Aaron is especially fraught for E.N. because of his autism. She explained, "with any child, consistency is important, and it's even more so with my child with autism because things have to be set in stone with him."

Like the juvenile court, we are persuaded by Sarah's testimony. She proved by clear and convincing evidence termination was in the children's best interests.

**AFFIRMED.**